IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

ANTHONY ROSHON ROBERTS, SR.,   )
                               )
            Plaintiff,         )
                               )
                               )    CIV-10-1392-M
v.                             )
                               )
ROBIN ROOF, et al.,            )
                               )
            Defendants.        )

SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action pursuant to 42 U.S.C. §1983. In an Amended Complaint filed December 27, 2010 (Doc. # 3), Plaintiff seeks monetary damages for alleged constitutional deprivations occurring at Cimarron Correctional Facility ("CCF") where Plaintiff is in custody. He names as Defendants CCF Warden Taylor, CCF mental health coordinator Inks, CCF health services administrator Roof, and Dr. Thompson, a psychiatrist providing treatment to inmates at CCF under contract with the Oklahoma Department of Corrections ("DOC").[1] Defendants

---

[1] Because CCF is owned and operated by Corrections Corporation of America, Inc. ("CCA"), Defendants Taylor, Inks, and Roof are employees of CCA.

1

Inks, Roof, and Taylor have filed a special report and a dispositive motion, and Plaintiff has responded to the motion.[2] The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). For the following reasons, it is recommended that Defendants Inks, Roof, and Taylor's Motion to Dismiss be granted and the cause of action be dismissed due to Plaintiff's failure to exhaust administrative remedies. Alternatively, with respect to Plaintiff's claim in counts one and two of deliberate indifference to his serious medical needs, it is recommended that Defendants Inks, Roof, and Taylor's Motion to Dismiss be converted to a motion for summary judgment. So construed, it is recommended that Defendants Inks, Roof, and Taylor's dispositive motion be granted and that summary judgment issue in favor of Defendants Inks, Roof, and Taylor and against the Plaintiff as to his claim in counts one and two of deliberate indifference to his serious medical needs.

I. Plaintiff's Claims

In counts one and two of his Amended Complaint filed December 27, 2010, Plaintiff contends that his Eighth Amendment rights have been violated due to the deliberate indifference of Defendants to his serious medical needs, "cruel and unusual punishment," and "excessive force." Plaintiff further alleges in counts one and two that Defendants unconstitutionally retaliated against him for filing grievances.

In support of his claims in counts one and two, Plaintiff alleges that on October 17,

---

[2]Defendant Thompson has not been served with process.

2010, he began to experience adverse side effects from his prescribed anti-depressant medication, Wellbutrin®. Plaintiff contends he also experienced " worser [sic] panic attacks due to the crushing" of Plaintiff's Wellbutrin® medication. Amended Complaint, at 4. He alleges he informed Defendants Inks and Roof of his symptoms, but he was not provided medical treatment. Plaintiff admits that he had been disciplined "in the past" for being noncompliant with his prescribed Wellbutrin® medication. Amended Complaint, at 5. Plaintiff further contends that Dr. Thompson ordered Plaintiff to take both his prescribed Wellbutrin® and another prescribed medication, Respirdal®, and further ordered that the Wellbutrin® would be discontinued if he refused to take the Respirdal®.

Plaintiff alleges he filed grievances addressed to Defendants Roof and Taylor on November 9, 2010 and November 12, 2010, in which he stated he was "at risk of a future harm of 'suicidality' or worser [sic] panic attacks which can become life-threatening without my medication." Amended Complaint, at 5. Plaintiff alleges he was then transferred to "suicide watch" on November 15, 2010, "due to the filing of his grievances." Id. Plaintiff admits he was previously placed on "suicide watch" on December 4, 2009, and that prior to his incarceration he had made "numerous attempts" to kill himself "by overdose." Id. Plaintiff alleges Dr. Thompson removed him from "suicide watch" after the psychiatrist determined that Plaintiff was not suicidal and that prison officials at CCF had misinterpreted the word "suicidality" contained in Plaintiff's grievance. Amended Complaint, at 6. Plaintiff alleges he received medical attention on November 16, 2010. Plaintiff names all four Defendants in counts one and two.

In count three, Plaintiff alleges he was denied "liberty interests" guaranteed under the Fourteenth Amendment. As support for this claim, Plaintiff alleges he submitted a request for medical treatment on November 1, 2010, for "panic attacks." Plaintiff alleges he was advised by an unidentified individual that Dr. Thompson "states that you are taking the Welbutrin [sic] because you are taking Respirdol [sic]. If you refuse the Respirdol [sic] then the Welbutrin [sic] will also be discontinued. [The] Welbutrin [sic] will be crushed no matter." Amended Complaint, at 7. Plaintiff alleges he then complained to Defendants Roof and Taylor that he was being forced to take medication he did not want to take. According to Plaintiff, Defendant Roof advised Plaintiff he had the right to refuse his medication and that he then signed two waiver forms stating he desired not to take the medication Risperdal®. Plaintiff alleges he was advised his medications would be crushed prior to being dispensed on November 2, 2010, and November 11, 2010, by Defendant Roof and a nurse. Plaintiff also complains that he had never previously been ordered to take two medications at the same time. Plaintiff asserts that "the prison officials at this facility are corrupted [sic] and prison officials will lie in 'the face of justice' in order to continue with their corrupted [sic] ways." Amended Complaint, at 8. Plaintiff contends Defendant Inks improperly diagnosed Plaintiff as having an anti-social personality disorder even though Plaintiff has a cellmate and talks to everyone. Plaintiff alleges he "has been 'forced' to take medication until it was discontinued prior to 11-15-10 and the plaintiff switched his medication to medication that does not have to be crushed." Amended Complaint, at 8.

In count four, Plaintiff again alleges that Defendants retaliated against him for filing

4

grievances in violation of the First Amendment. In support of this claim, Plaintiff alleges he submitted two grievances to Defendant Roof and received no responses. Plaintiff alleges he submitted an emergency grievance to Defendant Warden Taylor on November 12, 2010.

On November 15, 2010, Plaintiff alleges he was informed by a senior official in his housing unit that he was supposed to go to the medical facility and when Plaintiff appeared at the medical facility he was ordered to change into a smock to be placed on observation until he was seen by Defendant Thompson. When Plaintiff refused this order, he alleges he was handcuffed behind his back until a captain arrived. Plaintiff alleges that he advised the captain that he was not suicidal, but the captain insisted Plaintiff change into a smock, and Plaintiff again refused. Plaintiff alleges that the Chief of Security and the DOC Contract Monitor arrived, and although Plaintiff "explained everything" to the Chief of Security and again denied he was suicidal, Plaintiff was ordered to change into the smock for placement in the medical unit for observation. Plaintiff alleges he then changed into a smock, which he describes as a "suicide gown." Plaintiff alleges he was seen by Defendant Dr. Thompson later that day and that Defendant Thompson determined Plaintiff was not suicidal. Plaintiff alleges Defendants Roof and Inks retaliated against him for filing a grievance with Defendant Warden Taylor and caused Plaintiff psychological stress.

II. Exhaustion of Administrative Remedies

Defendants Inks, Roof, and Taylor move to dismiss Plaintiff's cause of action against them on the ground that Plaintiff failed to exhaust administrative remedies concerning his claims. The PLRA, enacted in 1996, directs that: "No action shall be brought with respect

to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion requirements are designed to ... give the agency a fair and full opportunity to adjudicate their claims" before the plaintiff proceeds to file an action in federal court. Woodford v. Ngo, 548 U.S. 81, 90 (2006). This provision applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 524, 532 (2002). Moreover, exhaustion of administrative remedies under the PLRA is required for all inmates seeking relief in federal district court even when the administrative procedure fails to provide a particular type of relief, such as monetary damages. Booth v. Churner, 532 U.S. 731, 734, 741 (2001).

Failure to exhaust administrative remedies is an affirmative defense. Jones v. Bock, 549 U.S. 199, 215-216 (2007). Once the affirmative defense is raised, the court must determine whether the Plaintiff properly exhausted administrative remedies by "using all steps that the agency holds out, and [by] doing so *properly* (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (quotation and citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91.

DOC has a "four-step process for administrative exhaustion of prisoner claims. Initially, a prisoner must seek to resolve any complaint by informally raising the matter with

an appropriate staff member." Little v. Jones, 607 F.3d 1245, 1249 (10th Cir. 2010). If the issue is not resolved informally, an inmate must submit a Request to Staff ("RTS") within seven days of the alleged incident. Special Report (Doc. # 39), Ex. 3 (Oklahoma Department of Corrections Inmate/Offender Grievance Process, § IV.B). If the issue is still unresolved, the prisoner must file a Grievance Report Form ("grievance") with the reviewing authority, which is generally the warden of the prison. Id. (§ V.A). If the grievance decision does not satisfactorily resolve the issue, the inmate must appeal the grievance decision to the Administrative Review Authority ("ARA"), which for medical issues is the DOC chief medical officer.[3] Id. (§ VII.B). According to DOC's grievance procedure, "[t]he ruling of the [ARA] . . . is final and [concludes] the internal administrative remedy available to the inmate . . . " Id. (§ VII.D.1).

In his responsive pleading, Plaintiff first argues that there are no available administrative remedies for his claims seeking monetary relief and he therefore need not exhaust his administrative remedies. This argument is foreclosed by Booth, supra.

The uncontroverted documentary evidence submitted by the parties reflects that Plaintiff submitted a RTS to Defendants Inks dated October 11, 2010, in which he complained that his medication was being crushed and he requested "that this 'singling-out' be ceased, my medication crushed in my presence, that I see the doctor again soon, or I can see how it works out with the courts and my attorney. Your choice, I have enough 1983

---

[3]The grievance procedure defines the ARA as "[t]he director, chief medical officer, or their designee to whom the formal grievance is submitted for final appeal." Id. § I(E).

forms." Complaint, Ex. A, at 4. In response, Defendant Inks informed Plaintiff that "[t]he psychiatrist ordered your med[ication]s to be crushed. Everyone on Wellbutrin has their med[ication]s crushed. Per D[octo]r's orders, you will be scheduled with psychiatrist ASAP." Id.

On October 24, 2010, Plaintiff submitted a RTS to Defendant Roof that he had received the wrong medication "for the second time since my medication (Wellbutrin) has been crushed in the last two weeks." Complaint, Ex. A, at 8. In response, Defendant Roof advised Plaintiff that the "medical department will continue to follow physician's orders." Id.

On November 5, 2010, Plaintiff submitted a RTS to Defendant Roof in which he complained that the crushing of his medication was causing adverse symptoms and that he had a constitutional right "against being forced to take both of medications or they'll be discontinued . . . ." Complaint, Ex. A, at 11. In response, Defendant Roof advised Plaintiff he had the right to refuse his medication but the prison's medical staff was obligated to give Plaintiff his medications "per the doctor's order" and "[a]ll Wellbutrin on this yard is crushed." Id.

On November 7, 2010, Plaintiff submitted a RTS to Defendant Taylor that "[n]o one can 'force' me to take both med[ication]s or lose both and if you or anyone does, it's a violation of the 14th [and] 8th Amendments. . . . [I]f you or HSA Roof allow the Psychiatrist to discontinue both of my medications, you all will be liable under § 1983 . . . . I want to take my medication whole and not crushed because it is causing me discomfort." Complaint, Ex.

8

A, at 12. In response, Defendant Warden Taylor advised Plaintiff that if he disagreed with the manner his medications were being administered he should discuss it with the doctor. Id.

On November 10, 2010, Plaintiff submitted a RTS to Defendant Warden Taylor complaining that he was not receiving medical assistance for symptoms, including "worsening panic attacks." Complaint, Ex. A, at 13. Defendant Warden Taylor responded that Plaintiff's medical request had been answered and Warden Taylor would not order the medical department to change Plaintiff's medical plans. Id.

On November 10, 2010, Plaintiff submitted a grievance to Defendant Roof, identified as Grievance No. 10-155, in which he complained that "the crushing of my Welbutrin [sic] is causing me to get [stomach problems] and worser [sic] panic attacks. . . . This has gone uncorrected and I'm being forced to take my medication." Complaint, Ex. D, at 5; Special Report (Doc. # 39), Ex. 2, at 6. He requested monetary damages and to have his "medication be given to [him] whole . . . ." Id. On November 15, 2010, Plaintiff submitted another grievance to Warden Taylor, identified as Grievance No. 10-153, in which he referred to his RTS submitted to Defendant Roof on November 5, 2010, "concerning the crushing of my medication (Welbutrin [sic])." Complaint, Ex. D, at 1; Special Report (Doc. # 39), Ex. 2, at 2. Plaintiff asserted that he was not receiving medical attention for stomach problems, vomiting, and panic attacks "getting worser [sic] since October. My Welbutrin [sic] is said to . . . help my panic attacks but the crushing of it has rendered my medication ineffective and has caused me medical discomfort since October." Id. Plaintiff also complained that he had been informed by a nurse that morning "that my depression medication (Welbutrin [sic])

9

has been discontinued. The irreparable harm I will suffer from is 'suicidality,' other worsening effects of the symptoms of my diagnosis . . . [and] no one has attended to my serious medical need." Id. at 1-2. Plaintiff sought monetary damages from Defendant Roof, Inks, "Dr. Thomas," and Warden Taylor "for their 'deliberate indifference' to my serious medical need." Id. at 1.

In response to these grievances, Plaintiff was advised by Defendants Roof and Taylor:

> In the past you have been caught and you have also admitted 'hoarding' medication on more than one occasion. You have been routinely evaluated and counseled by two psychiatrists, three medical providers, our mental health coordinator, and multiple nurses since your arrival at CCF on June 5, 2009. It has been explained to you by all of the staff members that your medications will be crushed prior to being dispensed. You received verbal direction from the psychiatrist, on 10/14/10, and written confirmation from a nurse, on 11/02/10, that the two mental health medications prescribed to you needed to be taken together and waiving one would result in the discontinuance of both medications. You signed a waiver for Respirdal on 11/01/10. Your medication will be dispensed as ordered by our providers.

Special Report (Doc. # 39), Ex. 2, at 2. Plaintiff signed the response affirming that he received a copy of the response on November 15, 2010.

On November 18, 2010, DOC's ARA Morton advised Plaintiff by letter that his attempted grievance appeal was being returned to him unanswered because "[g]rievances pertaining to medical issues must be submitted to the ODOC Chief Medical Officer." Complaint, Ex. D, at 7. Plaintiff was advised how to properly pursue his appeal. In a letter addressed to Plaintiff dated December 28, 2010, DOC's Medical Services Administrator

10

McCoy informed Plaintiff that his attempted grievance appeal was being returned unanswered because there was no record of receipt at CCF of a grievance number 10-1555. Plaintiff was advised to contact his case manager if he had questions concerning the grievance process or needed assistance. Special Report (Doc. # 39), Ex. 5, at 5.

"An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under the PLRA for failure to exhaust his administrative remedies." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). Plaintiff has not demonstrated that he completed the grievance procedure concerning any of the claims raised in his Amended Complaint. Therefore, Defendants Inks, Roof, and Taylor's Motion to Dismiss the cause of action due to Plaintiff's failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) should be granted.

III. Standard of Review - Motion to Dismiss Converted to Motion for Summary Judgment

Even if Plaintiff could demonstrate that he exhausted available administrative remedies concerning his claim in counts one and two of deliberate indifference to his serious medical needs, Defendants Inks, Roof, and Taylor move to dismiss this claim for failure to state a claim for relief under 42 U.S.C. § 1983. A motion to dismiss may be granted when the plaintiff has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion must be converted to a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court" and "all parties . . . [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. Fed. R. Civ. P. 12(b). See David v. City and County of Denver, 101 F.3d 1344,

1352 (10th Cir. 1996)(motion to dismiss should be converted to one for summary judgment if court considers matters outside the pleadings and the parties were given notice and opportunity to submit relevant evidence), cert. denied, 522 U.S. 858 (1997). Both parties rely on matters outside the pleadings in connection with Defendants Inks, Roof, and Taylor's dispositive motion, and Plaintiff was notified of his responsibilities under Rule 12(b)(6) and 56 in responding to Defendants' motion. Doc. # 41, Order. Therefore, the motion is converted to a Rule 56 motion for summary judgment.

Summary judgment may be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. Burke v. Utah Transit Auth. & Local, 462 F.3d 1253, 1258 (10th Cir. 2006)(quotation omitted), cert. denied, 550 U.S. 933 (2007). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id. "At the summary judgment stage, a complainant cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." Burke, 462 U.S. at 1258 (internal quotation marks and citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quotations

omitted).

IV. Eighth Amendment Claim of Deliberate Indifference to Serious Medical Needs

Plaintiff alleges in counts one and two of the Amended Complaint that his Eighth Amendment rights were violated by Defendants' deliberate indifference to his serious medical needs. Plaintiff's claim that Defendants have violated his rights under the Eighth Amendment of the Constitution is governed by the Supreme Court's decision in Farmer v. Brennan, 511 U.S. 825 (1994). In Farmer, the Court reiterated that a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at 828. See Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005)(Eighth Amendment is violated if prison officials show "deliberate indifference to an inmate's serious medical needs"). Because prisoners have been "stripped ... of virtually every means of self-protection and ... their access to outside aid [has been foreclosed]," the Court reasoned that "the government and its officials are not free to let the state of nature take its course." Farmer, 511 U.S. at 833.

A plaintiff claiming that prison officials have been deliberately indifferent to the prisoner's medical needs must prove two elements. The prisoner must show that, objectively, the inmate's medical needs were "sufficiently serious," and, subjectively, the prison official acted with a "sufficiently culpable state of mind" such that the official knew of and disregarded an excessive risk to inmate health or safety. Self v. Crum, 439 F.3d 1227, 1230-1231 (10th Cir.), cert. denied, 549 U.S. 856 (2006); see also Mata, 427 F.3d at 751.

Plaintiff contends that he did not receive adequate medical care at CCF during the

months of October through December 2010 for side effects he suffered from taking his anti-depressant medication, Wellbutrin®. Plaintiff also contends that he suffered worsening panic attacks because his Wellbutrin® medication was being crushed before it was dispensed to him. Plaintiff further contends that the psychiatrist, Dr. Thompson, forced him to take both Risperdal® and Wellbutrin® together, although he admits he executed a waiver of liability and was allowed to discontinue the Risperdal® medication.

The uncontroverted records of DOC, which are included in the Special Report, show that Plaintiff submitted numerous Requests for Medical Services during the relevant time period. In several of these requests, Plaintiff stated that he was experiencing diarrhea, vomiting, and other symptoms because his Wellbutrin® medication was being crushed. Special Report (Doc. # 39), Ex. 1, at 5, 6, 9, 10, 11, 12, 13. Plaintiff was seen in CCF's ISU unit on September 17, 2010, by Defendant Inks for a medical evaluation. Defendant Inks noted he confronted Plaintiff regarding Plaintiff's hoarding of his prescribed medication, Wellbutrin®, and Plaintiff was reminded that his treating psychiatrist had ordered that any medications being hoarded would be discontinued. Special Report, Ex. 1, at 3. Mr. Inks noted that Plaintiff was diagnosed with anti-social personality disorder. Id.

In a psychiatric examination of Plaintiff conducted on October 8, 2010, Dr. Thompson noted that Plaintiff's current medications were Wellbutrin® and Risperdal® and Plaintiff denied significant sleep difficulties or medication side effects. Plaintiff admitted he had been hoarding his Wellbutrin® medication for several days, and Dr. Thompson noted that he continued Plaintiff's medications but ordered that the Wellbutrin® medication be crushed.

Diagnoses of depressive disorder not otherwise specified and anti-social personality disorder were entered by Dr. Thompson in his note of this examination. Dr. Thompson further noted Plaintiff was advised to return for follow-up treatment in three months. Id., at 4.

The uncontroverted record contains a written Waiver of Treatment/Evaluation form signed by Plaintiff on November 1, 2010, in which Plaintiff stated he refused to take Risperdal® even though he had been advised that he was subject to a risk of increased mental health problems. The waiver includes Plaintiff's affirmation that he assumed full responsibility for this refusal and released the institution, its employees, and officer, and the medical provider from all legal responsibility and liability. Id., at 8. The waiver also contains the signatures of Dr. Thompson and two witnesses.

On November 15, 2010, Plaintiff was seen by Dr. Thompson, and Dr. Thompson noted that Plaintiff had complained in several medical requests about the crushing of his Wellbutrin® medication even though he admitted hoarding the medication. Special Report, Ex. 1, at 16. Dr. Thompson noted Plaintiff was offered medication options but indicated he wished to continue taking Wellbutrin®. Id. Dr. Thompson noted that Plaintiff had a significant history of medication noncompliance with previously prescribed anti-depressant medications, that Plaintiff had made a previous statement of "future suicidality," and that a nurse reported he had been "extremely difficult today." Id. The psychiatrist further noted that Plaintiff denied suicidal ideation, plan, or intent and expressed no understanding concerning his written statement. Dr. Thompson noted he "[i]nformed [Plaintiff] how the statement would be viewed in the future." Id. After noting that Plaintiff was agreeable to

start a different anti-depressant medication, Dr. Thompson noted he prescribed a different anti-depressant medication for Plaintiff and ordered Plaintiff be discharged from the medical unit as he did not present a danger to himself. Id. at 17.

Dr. Thompson noted Plaintiff was again seen on December 20, 2010, for follow-up evaluation after he was last seen on November 15, 2010, in the medical unit "when he wrote 'suicidality' in his grievance." Id. Plaintiff denied medication side effects but indicated problems with worsening anxiety. Dr. Thompson noted that Plaintiff reported he was anxious but that Plaintiff appeared calm, and the dosage of Plaintiff's anti-depressant medication was increased. Id. at 18. Dr. Thompson's diagnostic assessment was the same as previously noted in the psychiatrist's record. Id.

Contrary to Plaintiff's allegations, uncontroverted medical evidence in the record reflects that Plaintiff received medical treatment on numerous occasions during the relevant time period. CCF's psychiatrist, Defendant Dr. Thompson, ordered that Plaintiff's anti-depressant medication be crushed only after Plaintiff admitted he was hoarding the medication and had been non-compliant with prescribed treatment. The uncontroverted record reflects that Plaintiff executed a waiver of liability and was allowed to discontinue his prescribed medication, Risperdal®, after he requested to discontinue the medication. After Plaintiff expressed a concern about his own "suicidality," he was placed in the prison's medical unit on November 15, 2010, where he was evaluated by Dr. Thompson and treated and discharged. Plaintiff has not demonstrated that Defendants Inks, Roof, or Taylor disregarded an excessive risk to Plaintiff's health, and Defendants Inks, Roof, and Taylor are

entitled to summary judgment with respect to Plaintiff's claims in counts one and two of deliberate indifference to his serious medical needs.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Motion to Dismiss filed by Defendants Inks, Roof, and Taylor (Doc. # 40) be GRANTED and that the cause of action be DISMISSED due to Plaintiff's failure to exhaust available administrative remedies concerning all of his claims. Alternatively, with respect to Plaintiff's claim in counts one and two of deliberate indifference by Defendants to his serious medical needs, Defendants Inks Roof, and Taylor's Motion to Dismiss should be converted to a motion for summary judgment. So construed, Defendants Inks, Roof, and Taylor's motion for summary judgment (Doc. # 40) should be GRANTED and judgment issue in favor of Defendants and against the Plaintiff as to Plaintiff's claim of deliberate indifference to his serious medical needs in counts one and two of the Amended Complaint.

The parties are advised of their respective right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court by ___ May 25th, 2011, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Supplemental Report and Recommendation partially disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this ___5th___ day of ___May___, 2011.

*/s/ Gary M. Purcell*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE